Wal-Mart Stores, Incorporated For a minute, Äôll call everyone in. I represent the appellate. This is an appeal from the trial court granting a summary judgment. The case had been moved to the jury. This is my first time here, judges. Probably my last time. IÄôve been practicing for a long, long time. IÄôve enjoyed it. Well, weÄôre glad to have you here. My problem is this is my fourth set of hearing aids. I canÄôt get them right. So I have to apologize if I donÄôt hear you as well. The acoustics is kind of rough in here because of the tall building, but thatÄôs my fault. Anyway, the court ruled and granted the summary judgment that the plaintiff had failed to come forward with more than a mere scintilla of evidence to  material fact. So the issue is whether or not the court committed error. And in order to determine that, we need to look at the evidence itself and see whether or not it does produce more than a scintilla. ItÄôs the strongest case IÄôve ever had on the Sleeping Falls. IÄôm kind of surprised at what the court said. Anthony Chester, the manager, testified under oath. He began working in February the 12th of 2012. The date of accident was 9 September the 12th, which was seven months later. He testified, ìWhen I first went there I saw marks all over the aisles. I didnÄôt know what they were. But as soon as it rained, people, all the employees would run and grab scores of buckets and cones and put them and mark all the leaks that were at the Wal-Mart store in Freeport. It didnÄôt take them long to figure out that there were leaks throughout the building. What was the evidence as to whether the leaks that had been reported were only where there were skylights or were the leaks elsewhere?   The skylights were all over the general store. The skylights were all over the general store. There were 75 leaks in the inspection record. The leaks were everywheres. Now at the particular spot where my client was located was right in the front. There was buckets and cones on the adjacent aisle. The manager is the one who did     If it didnÄôt rain then the probability that there would be water would be very high. He did in fact find that it was a rainy day. Contrary to his affidavit which he did not know was an affidavit to be used to remove the case. And that he did find water. They wiped the water off and things of that nature.     water. He did not find any leaks. He did not find any leaks. He did not find any leaks. He did not find any leaks.  At the time of the accident the leaks had not been repaired. All they did was mark them with Cones and buckets. Slip and falls were a very common thing. Everybody was always on a look out for new and additional leaks because there were new leaks besides the old ones. Constantly. So, uh, They've got the maintenance records and I have a very difficult time. I couldn't understand what they said. It was so little with a magnifying glass I couldn't even, I couldn't even see what they were. I'm remembering there was some kind of evidence. I'm asking you so you can correct me or elaborate. There was some kind of evidence from an expert that said the roofs like this need to be repaired or replaced or repaired every 20 years. What was that evidence? There was no evidence of any repair work that I could see judge. No, no, no. I didn't ask you about repairs that were conducted. I'm saying that there was some kind of an indication from an expert or some other person who said that roofs like this should be replaced or repaired every 20 years. I'll get, I'll get to that next. You're telling me there to be. He's a roofing expert. And he testified that he was very familiar with the type of skylights and the roofs. He's been a roofing expert for years and years. And it's important to note that he reviewed all of the depositions and a lot of different evidence and what have you. And that even though he did not personally inspect the, the building over there at Threeport, the cases hold, the Doe-Bear and Thompson cases hold that it's not necessary for an expert to personally inspect in order to have a valid affidavit. What he said, judge, what was important, he said on number 17, or number 16, this building or this roof had been there for 15 years. When there are several leagues that develop toward the end of the expected life of the roof of skylight, it is in a relative short period of time. This is a totally different situation which indicates that the roof is losing its ability to prevent rainwater from leaking into the building as well as the caulking and the ceiling of the skylights are drying up and losing their ability to prevent rainwater. When this happens, you need to change the roofing or strip and replace all the old caulking and ceiling. This they never did until after this accident. And we asked Chester, the manager, the question in his deposition in the record, what happened after they finally addressed it. They said it was a drastic improvement. It pretty much cured everything. But the key to this case is the question we're asking. If you look at paragraph 18 of the statute, what is that for David? If you don't address these problems as indicated above, this was an old roof, then by allowing the leaks to continue without proper corrective action, this will create a condition where there will be many new leaks and worsening of the old leaks in a short period of time. The above will create a condition of safety hazards without being able to tell where and when the new leaks will appear, which they will in a relatively short period of time. It will not be possible to adequately warn and protect the store customers from such leaks once you create that condition. Chester's testimony almost tracks this. He said everybody will look out to try to identify and locate new leaks. Mr. Newman, I'm looking at one of the documents that you said you couldn't read. It's a work order, and it's dated August 12th, and it says r&b roofing is the contractor, and then it says roof recover. Was the Wal-Mart building roof recovered? Yes, it says work order entry August 1st, 1912. 2012. This is March 4th, and that is        This is March 4th. This is March 4th. This is March 4th. This is March 4th. This is March 4th. This is March 4th.    Chester says in relation to the case. The manager says that it continued till long after she was injured. It fell. He said slip and falls were common thing in the whole place. Now, what is important about this is, RS 92800.6 controls the law. The law has been changed. And this is what we have to prove. One, the condition presented an unreasonable risk of harm to the claimant. And that risk of harm was reasonably foreseeable. Of course, we prove that. That's almost self-evident. This is the important one. Two, the merchant either created or had actual constructive notice of the condition which caused the damage prior to the occurrence. Three, the merchant failed to carry uniformed cleaning of a safety procedure and so on and so on. The merchant either created or had actual or constructive notice. This is very important. If you created, then there's no need for actual or constructive notice. The fact that you created the condition in and of itself shows that you have knowledge of what is going on. This is what our whole case is based on. This was testified to in the affidavit by our expert. This created a condition whereby the leak would get more and more and you wouldn't know where they were or anything else. So we fit right in. Number two, I know the defendants in the briefs and so on, they presented cases that deal with constructive notice, actual notice, lack thereof. We have no duty. We are not required to prove active or constructive notice. We are relying strictly on the premise that the merchant either created it or had actual. If you created, there are numerous cases that says there is no need of notice. Notice is not an issue. That is the key to our case. Now, the court, when it read the affidavit, noted that he had not personally inspected it. This was, of course, the argument that was made by the appellee. The cases say that it's not necessary. But what is important about this case is that this is a motion and summary judgment and the court did not apply the proper standard of review. It says that the non-movement testimony, his expert Busby accepted as true. The court's role is to narrowly limit it to assess whether or not a genuine dispute exists as to material facts requiring a trial. He cannot, he said, the evidence of the non-movement is to be believed. And all justified inferences are to be drawn in his favor. The court cannot weigh the evidence, he cannot weigh credibility or anything else in ruling on the motion of summary judgment. That is the province of the jury. And this is exactly what the court did. The court did not place any weight on Araby's affidavit. The Thompson case is right in point. You can prove that there was problems with faulty repair and you have an expert who testified who said it must be accepted as true. Because the motion of summary judgment is a very harsh remedy. It keeps you from the prior view of your day in court if you lose it. If we lose it, we go out of court. If we win this motion, we still have a trial. The things that the court was trying to talk when it was weighing the evidence and the weight to be given in the affidavit, that's the province of the jury at the trial. That is totally improper for the judge to do that at this junction. That is harmful to law. Completely. So when you see all the problems we had, we have photographs and everything else. But the court said there was not anything more than this in the field of evidence. And dismissing or granting the motion of the judgment, it just doesn't make sense. This case is replete with strong evidence supporting the proposition that the leaks had been there for months. They remained there for months. They were never repaired. They never stopped marking the aisles. They never stopped putting buckets and cones. That was a constant thing. When she fell, they came, the manager came and put cones and buckets right there. And when asked a direct question, he said if it's raining, and it was raining that day, then the probabilities are there were leaks. And there was. He found water. He found a leak. His report is in evidence. Even though an affidavit for removal, they say there was no evidence at all. It was not raining or, you know, things of that nature. A lot of things that just don't add up when you look at the defense and you look at the real facts. We cite several cases where there's a case where the person, the merchant creates the condition. Then that in itself is a dismissal. It's more of a dismissal. Let's go back. Let's go back. Your time has expired now, Mr. Newman. You saved time for rebuttal. Your time has expired. Your time has expired. You're out of time. You saved time for rebuttal. Yeah. That was quick, all right. Mr. Johnson. It does. Okay. I appreciate it. All right. Good morning, Your Honor. Does Walmart own this building? I'm sorry? Does Walmart own the building where the accident occurred? Yes. So they own the roof. Yes. So this work order that I'm looking at is dated August 2012, and it says roof recover by R&B roofing. What's the significance? In or about May of 2012, Walmart remodeled that store. And in connection with the remodel, the skylights were fixed. And so a lot of them were recovered. I think that is what you're asking. A lot of the skylights were recovered because they were leaking? The skylights were fixed. I'm not exactly sure of the mechanics of how they fixed it, but they were fixed. Well, it's your client. Right. So what does this document mean, roof recover? Is that working on the skylights in the roof? Yes. It refers to the skylights on the roof being recovered. Okay. What does the record show about, if anything, about whether this accident occurred beneath a skylight? There is no evidence in the record that any roof leak came from a skylight in the location where she fell. In fact, the only thing in the record dealing with skylights is that there were leaks from skylights, but it lists the leak locations where that was occurring, and those were in entirely different departments of the store, and at different times. There's nothing in the record showing that there was an active roof leak from a skylight where she fell. There's actually nothing in the record showing there was an active roof leak from a skylight anywhere in the store at the time she fell. All right. So the document that Judge Clement asked you about wouldn't apply to this case because you've told us that that only dealt with repairs to skylights. Okay. Well, I guess I didn't understand your question. Did you ask that again then? I'm sorry. Well, the question is you said that the document that Judge Clement referred to had to do with repair or sealing up of skylights, but you've told us that this accident did not occur beneath a skylight, so any repairs to skylights would not have any relevance here. Right. Only relevant to the extent that the plaintiff has brought them up and that he has assumed that the leaks came from the skylights. But what's in the record doesn't show that there were any leaks from the skylights where the incident occurred. What does the record show, if anything, about one way or the other, about whether there were leaks other than from skylights? That's a very good question. There is nothing in the record of any reported leaks from any source other than skylights. I mean, there's nothing in the record showing that there was a leak at that time in the location where she fell. Well, sometimes doesn't water. I live in an old house, so I know this only too well. But if your roof is leaking, sometimes the water travels to find a place to exit. It doesn't always mean perhaps the water gets in at the skylight, but then can't get out if it's been resealed, so it travels to where there's an exit. If I can answer that question, Your Honor, the leak locations that were listed, there were five leak locations listed, and this is a 100,000-square-foot store. The area where Ms. Reggio claims she fell is the front aisle by the drug department. Now, the leak locations are in areas totally apart from that, in vastly different parts of the store. So it's not like a roof leak in one area of the store is going to travel all the way to the front aisle by the drug department where she claims she fell. I mean, that ---- Are you claiming that Walmart only did repairs on the skylights or the whole roof, wherever it was needed? I guess if I could know for sure which document you're referring to there. You're welcome to look at it. This is part of the record. See, it says roof recover, August 2012, by R&B Roofing. So that looks like roof repair to me, roof maintenance. And the roof was repaired. Like I said earlier, the Walmart store was going through an extensive remodeling, and in connection with that, the roof was repaired and the skylights were actually repaired. But there's no evidence distinguishing this from skylight repairs. Looks like a contested issue to me. Well, can you repeat the question? I'm sorry. This doesn't say skylight repair. Do you have any documents that say work was only repaired, issued to repair the skylights and that the leak was only where the skylights were, that it wasn't a general problem with the whole roof that was owned by Walmart and Okay. This is document number 235 in the record. Well, just stay at the podium. You can just give us a document number and tell us what it says. Okay. Yeah, this is document number 235 in the record where it refers to the repairs of the skylights and repairs of the skylights being complete. And this is record number 235. What's the date? And that would be May 9, 2012. Same contractor? I'm sorry? Is it the same contractor or the roofing? Yes. Yes, this would be Clifford Lee. Now, Mr. Newman referred to testimony from the manager who said that the June and fall incidents were common. Would you comment on what the record shows in that regard? Right. What Mr. Chester said is that during that time, when there were roof leaks, they had a system in place to deal with the roof leaks. And that involved putting tape on the ground to mark out the spot where the roof leak was occurring and then putting out cones and buckets in order to make sure the area was safe. And the problem is here, there was nothing to trigger that system into place because nobody at Walmart knew that there was any water on the floor in the area where the incident occurred. Did the manager say, I just made a note here when Mr. Newman described the manager's testimony, that he said the manager said that slip and fall incidents were common. I'm not asking you whether that's true or false. I'm asking you whether the manager said that in the summer judgment record. He did say that, but he said that in reference to his time at Walmart, it's just not uncommon for those kinds of things to happen, people to claim that there's a slip and fall. He wasn't directly referring to it was common during this time when there were roof leaks. Just as a general statement, it's not uncommon. The case, Your Honor, really boils down to one simple issue. The plaintiff simply cannot meet her burden of proof that under the Louisiana Motion of Liability statute, Walmart either created a hazardous condition or had notice of one in the location where she fell. The plaintiff's argument would have this court assume that Walmart knew of a hazardous condition where the incident occurred simply because the roof at issue had experienced leaks in the past at other parts of the store. But the law in this court is clear that the court should not be making those kinds of assumptions and that the burden is on the plaintiff under the Motion of Liability statute to bring forth positive evidence showing that Walmart had notice of an unreasonably dangerous condition at the location of the slip and fall, and she has not and cannot do that. Louisiana statute doesn't require you to have notice if you created the condition. Right. If you're up there repairing the roof or not repairing the roof, that could be considered creating a condition that would cause someone to slip and fall. You don't need notice. Well, if you look at the Gray v. Walmart case, which I cited in the brief, the same kind of arguments were made there. And what this court held in that case was that in order to meet the creation of the condition standard, it's not enough to say, well, the roof was leaking in other places, so it must have been leaking here. That's the same thing the plaintiff tried to do in Gray. They said, well, the roof was leaking elsewhere, so the defendant must have created the roof leak where I fell. And the court said, no, that's not the law. You have to show evidence, you have to bring forth positive evidence of a hazardous condition at the location of the fall. Well, Counselor Gray is not a published opinion. I'm not disagreeing with it, but I do start from that point, so it's not precedent. There is this debate, not national debate or whatever, but there's this debate whether the condition is the leaky roof that needed to be replaced or whether the condition is only the specific spot where there is water on the floor. I would say this case is relatively simple. If Walmart, if we look upon this as a fact issue, whether Walmart created the condition, allowed the condition to continue or the leaky roof, I think the undisputed but plenty of evidence of leak problems on the roof. But it's a much harder case if the condition that we have to find that you created in your client is that spot with that water on the floor. What's your best Louisiana case, not Gray, that says we ought to look at that, not at the leaky roof as the condition, but at the spot where she fell as the condition? I may, that's not the contrast you see. How do you respond to my suggestion that there may be two different conditions? Well, what the court held in Gray was consistent with Louisiana cases on that issue. And it stands to reason that under the Merchant Liability Statute, you've got to show evidence of a hazardous condition where you claim the hazardous condition is. Well, you have this roof and there's some testimony that leaks would come in new places as it aged. So are you saying, and it may be true, are you saying that, I'm sure everything you've said is true, I may agree with what you're about to say, that despite Walmart's knowledge, potentially, it's a fact question, of leaks springing up in new places as the rain continues to fall and the months go by, that unless the plaintiff can show not that condition on the roof, but still must show that the particular place where the woman fell, that they must be aware that that spot was going to be a dangerous location, that there's no liability? Correct, Your Honor, that is correct. That's a pretty harsh standard considering that there's, I guess the opposite may be. What if the plaintiff had gotten up on the roof while the roof was repaired and showed there was a hole there? Would that have done the deed? Well, yes, that would be a completely different story. If the plaintiff was able to bring forth some kind of evidence connecting an employee of the merchant of Walmart to Well, I don't mean that, just that they would have found evidence that showed directly above where she fell or wherever the path of the water may have flowed, that the source of that water was a hole in the roof. Not that an employee knew about it in advance. Would that have helped the case? Would that have made the plaintiff's case? I'm sorry, can you repeat the question one more time? I don't know. Why don't you move on? Let me ask you something. You're relying on Gray, but in Gray the problem was that they didn't provide any evidence that Walmart was responsible for the maintenance of its own roof. That's totally different here where you have work orders and testimony showing that your Walmart was responsible for the maintenance of its roof. So I don't see how you can rely on Gray. Correct, Your Honor. But if you look at the holding of the Gray case, which is crucial, what the court focused on and what the Gray case turned on was that in the absence of evidence connecting Walmart employees to the roof leak, no issue of fact exists regarding whether Walmart created the roof leak that injured Gray. And that's what they turned on. And that's just the same here. We don't have any evidence. That's the absence of evidence. Here you have evidence. You've got work orders. You've got people saying, yeah, the roof was leaking. Yeah, we were repairing the skylights. I mean, you've got the evidence in this case where Gray didn't have come forward with the evidence. They didn't even show that Walmart was responsible for maintaining the roof. So maybe they didn't own that building. But you own this building. You own this roof. Right. Do you have another case? Well, if I could go back to the fact that I do think this is just like Gray in the sense that there's nothing connecting any Walmart employee to the creation of the roof leak. But the maintenance records mention. It doesn't have to be an employee. It can be an agent.  It doesn't have to be an employee. It can be a contractor that you've hired, someone working on your behalf, working on the roof. It doesn't have to be an employee. It can be someone employed by you, like a subcontractor. Well, then the burden is on the plaintiff then to put forth evidence in the record which shows that. And there isn't any in this case. You don't think the work orders show that Walmart was repairing its roof? That Walmart paid for contractors to maintain its roof, yes. That's the difference with Gray. But it doesn't show that any Walmart employees were connected to the actual roof leak, which is what the court in Gray held was the major factor. That was the focus. Let me make sure I understand. It may just be the same thing Judge Clement was offering, asking. You seem to be saying that Gray, in the cases that it relies on, requires that a Walmart employee be responsible for the roof. Is that what you're saying? But isn't Walmart responsible for the roof? And if Walmart doesn't take care of the roof, its managers and its national office and everybody else in America connected is responsible. Responsible for its roof and to make sure that it doesn't leak. But under the Merchant Liability Statute, the plaintiff still has to show that there was a hazardous condition where she fell. It's not enough to say, well, you know, Walmart did a bad job in maintaining its roof, so there must have been some issue there that caused my harm. Under the Merchant Liability Statute, they've got to bring forth positive evidence showing that Walmart had notice of the hazardous condition. And she can't do that. There's nothing in the record which shows that she can do that. Are you saying that's because the condition cannot be, under the Louisiana statute, a badly maintained roof?  Well, I think it's, under the plaintiff's argument, any merchant who maintains its own roof would be responsible for any harm caused by an unknown roof leak. Well, the Merchant Liability Statute is not a strict liability statute, but that is exactly how the plaintiff's argument would have this court interpret it. Well, let me flip that around. It's not that Walmart's unfamiliar with roof leaks. They may have been unfamiliar that day that there was a new leak, but Walmart certainly was on notice of many leaks in this roof, and there's some, and you can tell me if there's anybody who actually said this, but it sounded like the manager did, that new leaks would come up frequently. So until that new leak is found, Walmart's not responsible, even though it knows about 15 other leaks in the roof? Well, I don't think the record indicates that the new leaks would come up all the time. In fact, the record only shows there's about five leak locations that were active leaks over about a four-month period, and this is a 100,000-square-foot store. We're not talking about leaks all over the place all the time. We're talking about a very limited amount of leaks, and none in the place where she says she fell. No prior leaks, but you don't know if the leak was there the day she fell, especially when your people are saying, oh, yeah, when it rains, it leaks everywhere. Right? I'm sorry, what was the question? Never mind. I think our acoustics are bad today. Thank you. All right, well, I believe your time has expired now, Mr. Johnson. Thank you. Okay, Mr. Newman. Yeah, you've saved time for rebuttal. Thank you, Your Honors. We talked about Drake, but the Drake case is totally different because there's no one ever disconnected Walt Burke with the leak itself. There was no evidence at all. It was a totally different thing. There had been a storm and a hurricane, and I think it may have done the thing. But it's a completely different case here. The leaks continued. There is no question about it. They were all over the place until such time as after this accident, when the managers testified, they finally addressed the issue, and when they did, there was a drastic and dramatic change. No more leaks. So Wal-Mart was doing something wrong. Now, whether it's skylights or whether it's a roof, it doesn't make any difference because in the affidavit of Mr. Araby, he said the skylights, the caulk, and the sealant gets old. You've got to change all that. They never changed it until a later date. No one disputes that they used buckets and cones throughout the store every time it rained. Where did that come from? Something they're not doing right. There's no question about that. So by the questions the court has, even though he was writing them down, I didn't hear them that well, it shows that all we have to do is create a genuine issue of material fact. That affidavit has to be accepted as proper. It creates a genuine issue of material fact. It's for the jury to decide and the questions that the honors have about what the situation was. All we have to do, because it's such a harsh remedy, it's lenient, the standard of care that we have to do is very lenient in defeating a motion of some judgment. Once we state there's a genuine issue of material fact, and this affidavit clearly does that, the manager's testimony clearly creates a genuine issue of material fact. Where is all this water coming from, from the ceiling? Why is it continuing? Why did he use buckets and cones? No one denies that. So there are genuine issues of material fact, and if there are, then they have to dismiss motion of some judgment. The court tried to decide the credibility of how much weight, value weight of weight given to the contractor. The court is not allowed to do that. That is totally improper. That's for the jury. Once we find and create a genuine issue of material fact, it has to be dismissed. So both parties are on equal basis. They go to court then, and you decide before the trial decides who's right and who's wrong. That's all we're required to do, and we've done that. This is the strongest case I've ever seen on Slip and Fall. I've never seen a case where they have scores and scores of buckets all over the place. We have pictures of that as far as their records. Look at page 231 and 233. I have never been able to decipher what it says. One of their records shows that there were 75. They reduced it to 21. I don't know what that means. It means they had 75 leaks, and they only tuned it to 21, something they didn't do because it continued until such time as they did what they were supposed to do. But all the questions you have will be answered by the trial of fact. I apologize. I'm not going to trial the case. All right. With my hearing. I have no idea how bad it was. That's okay. It's been a long time, but I guess everything . . . I'm like a root. I'm getting worn out. So that's the same thing. I appreciate it very much in your hearing here. Thank you very much. Thank you, Mr. Newman. Your case and all of today's cases are under submission, and the Court is adjourned.